IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

REBECCA SINGLETON,                §
                                  §
              Plaintiff,          §
                                  §
v.                                §    CIVIL ACTION NO. H-17-2903
                                  §
YOUNG MEN'S CHRISTIAN             §
ASSOCIATION (YMCA) OF             §
GREATER HOUSTON,                  §
                                  §
              Defendant.          §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Rebecca Singleton, brings this action against defendant, Young Men's Christian Association ("YMCA") of Greater Houston, asserting a claim for employment discrimination based on race (African-American) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1) ("Title VII").[1] Pending before the court is Defendant YMCA's Motion for Summary Judgment ("Defendant's MSJ") (Docket Entry No. 48), Memorandum in Support of Defendant's Motion for Summary Judgment ("Defendant's Memorandum") (Docket Entry No. 49), and Plaintiff's Motion to Strike Portions of Defendant's Summary Judgment Evidence ("Plaintiff's Motion to Strike") (Docket Entry No. 51). For the

---

[1]Plaintiff's First Amended Complaint ("First Amended Complaint"), Docket Entry No. 32, p. 1 ¶ 2. Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

denied as moot, Defendant's MSJ will be granted, and this action will be dismissed with prejudice.

## I. **Undisputed Facts**

Plaintiff is an African-American woman who began working for the YMCA on a part-time basis in January of 2009 as a group exercise teacher at the Orem YMCA in Houston, Texas. She remained a part-time employee until 2011 when she moved to the Tellepsen YMCA in downtown Houston to serve as Healthy Living Director.[2]

In December of 2011 or 2012 Chad Swirczek became the plaintiff's supervisor when he was hired to be Executive Director of the Tellepsen YMCA.[3]

In February of 2013 Swirczek recommended plaintiff for promotion to Senior Healthy Living Director. Plaintiff was interviewed by Swirczek and Vice-President of Human Resources, Jennifer Lopez, who approved her for promotion. Plaintiff was promoted and received a pay increase to $57,000.00 making her one

---

[2]Memorandum in Support of Defendant's Motion for Summary Judgment ("Defendant's Memorandum"), Docket Entry No. 49, p. 11; and Plaintiff's Response to Defendant's MSJ, ("Plaintiff's Response"), Docket Entry No. 50, p. 6 (citing Oral Deposition of Rebecca Singleton ("Singleton Deposition"), pp. 33:9-34:3, Exhibit B to Plaintiff's Response, Docket Entry No. 50-3, p. 9).

[3]Plaintiff's Response, Docket Entry No. 50, p. 6 (citing Oral Deposition of Chad Swirczek ("Swirczek Deposition"), pp. 5:21-6:4 and 14:7-9, Exhibit E to Plaintiff's Response, Docket Entry No. 50-6, pp. 2 and 4).

one of the three highest paid employees at the Tellepsen YMCA.[4]

In April of 2013 plaintiff took leave allowed by the Family Medical Leave Act ("FMLA").[5] While plaintiff was on FMLA leave she had a telephone conversation with Swirczek during which Swirczek raised his voice and after which plaintiff lodged a complaint against Swirczek to the defendant's Human Resources office.[6]

On May 3, 2013, Swirczek gave plaintiff an Employee Counseling Report.[7] The Employee Counseling Report stated:

> You are being issued this final written warning for several infractions of company policy and standard codes of conduct:
>
> 1. The repeated offense of adjusting your employees timecards and not noting the comments for the adjustment.

---

[4]Id. (citing Singleton Deposition, pp. 34:22-35:4, Exhibit B to Plaintiff's Response, Docket Entry No. 50-3, p. 9); Defendant's Memorandum, Docket Entry No. 49, pp. 11-12 (citing Declaration of Jennifer Lopez ("Lopez Declaration"), Exhibit A to Defendant's Memorandum, Docket Entry No. 49-1, p. 3, ¶ 5, and Declaration of Chad Swirczek ("Swirczek Declaration"), Exhibit B to Defendant's Memorandum, Docket Entry No. 49-2, p. 3 ¶¶ 6-7).

[5]Plaintiff's Response, Docket Entry No. 50, pp. 6-7 (citing Singleton Deposition, p. 69:1-20; Exhibit B to Plaintiff's Response, Docket Entry No. 50-3, p. 18); Defendant's Memorandum, Docket Entry No. 49, p. 12 (citing Swirczek Declaration, Exhibit B to Defendant's Memorandum, Docket Entry No. 49-2, p. 3 ¶ 8).

[6]Id. at 7 (citing Singleton Deposition, pp. 73:15-74:18 and 80:1-13, Exhibit B to Plaintiff's Response, Docket Entry No. 50-3, pp. 19-20).

[7]Defendant's Memorandum, Docket Entry No. 49, pp. 14-15. Plaintiff's Response, Docket Entry No. 50, pp. 7-8 (citing Singleton Deposition, pp. 82:20-83:10, Exhibit B to Plaintiff's Response, Docket Entry No. 50-3, p. 21).

2. [P]er Standards of Conducts #10, [f]or threatening your staff to keep information related to your daughter and who she dates to themselves or that you would make their Y career very bad.

3. [P]er Standards of Conducts #9, [f]or not completing the staff schedule/forecast per our conversation on March 4th in a timely manner. Note that the Y was informed of your FMLA on Thursday, March 28th as well you took off March 7th, which informed me on March 4th and took off March 11 which you informed me on Sunday March 10th at 10:22 p.m.

4. For the 2nd time, I have been made aware that you are directly spreading rumors and gossip about me and other employees. According to our Workplace Bullying policy, the YMCA does not tolerate any form of bullying and anyone engaging in workplace bullying can be terminated.

5. Not calling members back within 24 hours or 1 Business Day, for example Jena Turner.[8]

Plaintiff signed the Employee Counseling Report without writing any comments in the section titled "Employee's Comments."[9]

In January of 2014 the YMCA reorganized the salaried employees at the Tellepsen YMCA. Pursuant to the reorganization, plaintiff's title changed from Senior Healthy Living Director to Senior Program Director and the number of employees under her direct supervision increased from one to three, but her salary of $57,000.00 remained

---

[8]Employee Counseling Report, Exhibit H to Plaintiff's Response, Docket Entry No. 50-9.

[9]Id.

-4-

the same.[10] Laura Wilson ("Wilson"), a white woman, who similarly received the title of Senior Program Director and experienced an increase in the number of employees under her direct supervision during the reorganization, received an annual salary increase to $53,000.00.[11] Following the reorganization Swirczek moved plaintiff — against her wishes — out of an office on the fourth floor and into a cubicle on the second floor.[12]

On March 26, 2014 the defendant terminated the plaintiff's employment for failing to meet the standards and expectations of the YMCA for a senior management position.[13]

---

[10]Plaintiff's Response, Docket Entry No. 50, pp. 13-14 (citing Swirczek Deposition, pp. 111:3-118:6, Exhibit E to Plaintiff's Response, Docket Entry No. 50-6, pp. 28-30; and January 6, 2014, Email from Chad Swirczek to Jennifer Lopez and Melanie Rouser, Exhibit M to Plaintiff's Response, Docket Entry No. 50-14). Compare Org Chart - Proposed 2013-14, Exhibit F to Plaintiff's Response, Docket Entry No. 50-7, with Reorganization Chart, Exhibit K to Defendant's Memorandum, Docket Entry No. 49-11, and Exhibit L to Plaintiff's Response, Docket Entry No. 50-13. See also Declaration of James Scaffidi ("Scaffidi Declaration"), Exhibit D to Defendant's Memorandum, Docket Entry No. 49-4, p. 3 ¶ 8.

[11]Plaintiff's Response, Docket Entry No. 50, p. 14 (citing January 6, 2014, Email from Chad Swirczek to Jennifer Lopez and Melanie Rouser, Exhibit M to Plaintiff's Response, Docket Entry No. 50-14). See also Scaffidi Declaration, Exhibit D to Defendant's Memorandum, Docket Entry No. 49-4, p. 3 ¶ 8.

[12]Plaintiff's Response, Docket entry No. 50, p. 15 (citing Singleton Deposition, pp. 119:23-124:5, Exhibit B to Plaintiff's Response, Docket Entry No. 50-3, pp. 30-31).

[13]Id. at 1-2. See also Defendant's Memorandum, Docket Entry No. 49, p. 20 (Lopez Declaration, Exhibit A to Defendant's Memorandum, Docket Entry No. 49-1, pp. 4-6, ¶¶ 15-21).

## II.  **Standard of Review**

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment.  Fed. R. Civ. P. 56.  Disputes about material facts are "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).  A "party moving for summary judgment must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986)).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."  Id.  If, however, the moving party meets this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show by admissible evidence that specific facts exist over which there is a genuine issue for trial.  Id. "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000).  Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."  Little, 37 F.3d at 1075.

-6-

## III.  **Analysis**

Plaintiff alleges that defendant discriminated against her on the basis of race (African-American) in violation of Title VII by terminating her employment.[14]  Defendant argues that it is entitled to summary judgment on plaintiff's claim because plaintiff is unable to present evidence capable of establishing a prima facie case of discrimination or to show that the legitimate, non-discriminatory reason for which her employment was terminated, is a pretext for race discrimination.[15]  Quoting Reeves, 120 S. Ct. at 2109, plaintiff argues that Defendant's MSJ should be denied because she has established a prima facie case, and a "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."[16]

### A.  **Applicable Law**

Title VII protects individuals from discrimination by an employer based on the "individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff may establish claims for employment discrimination in violation of

---

[14]First Amended Complaint, Docket Entry No. 32, p. 1 ¶ 2.

[15]Defendant's Memorandum, Docket Entry No. 49, pp. 10 and 34.

[16]Plaintiff's Response, Docket Entry No. 50, p. 24.

Title VII by using direct evidence or by using the indirect method of proof set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973). Plaintiff relies on the McDonnell Douglas framework to establish her claim.[17]

Plaintiff's initial burden under the McDonnell Douglas framework is to establish a prima facie case. 93 S. Ct. at 1824. If plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. Id. If the defendant meets this burden, the plaintiff must adduce evidence capable of establishing that the defendant's articulated reason is false and is, instead, a pretext for discrimination. Id. at 1825.

## B.    Application of the Law to the Undisputed Facts

Defendant argues that it is entitled to summary judgment on plaintiff's discrimination claim because plaintiff is unable to establish a prima facie case.[18] Alternatively, defendant argues that plaintiff was terminated for the legitimate, non-discriminatory reason of failing to meet the standards and

---

[17]Id. at 22 (citing Lee v. Kansas City Southern Railway Co., 574 F.3d 253, 259 & n. 11 (citing McDonnell Douglas, 93 S. Ct. at 1817)).

[18]Defendant's Memorandum, Docket Entry No. 49, pp. 10 and 34.

-8-

expectations of the YMCA for a senior management position,[19] and that plaintiff is unable to present evidence capable of showing that the stated reason for terminating her employment was not true or was, instead, a pretext for race discrimination.[20]

### 1.   Plaintiff Fails to Establish a Prima Facie Case.

A prima facie case of race discriminatory requires a showing that the plaintiff (1) was a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of her protected class or treated less favorably than other similarly situated employees who were outside of her protected class. See Alkhawaldeh v. Dow Chemical Co., 851 F.3d 422, 426 (5th Cir. 2017); (citing McDonnell Douglas, 93 S. Ct. at 1824); Paske v. Fitzgerald, 785 F.3d 977, 985 (5th Cir.), cert. denied, 136 S. Ct. 536 (2015).

Defendant does not dispute that plaintiff has satisfied three of the four elements required to establish a prima facie case of race discrimination, i.e., plaintiff belongs to a protected class (African-American), plaintiff was qualified for her position, and plaintiff suffered an adverse employment action when the defendant terminated her employment.[21]  Defendant argues that plaintiff cannot

---

[19]Id. at 20 (citing Lopez Declaration, Exhibit A to Defendant's Memorandum, Docket Entry No. 49-1, pp. 5-6, ¶ 21).

[20]Id. at 34 ("Plaintiff cannot show by competent evidence, that each  nondiscriminatory reason is actually a pretext for racial discrimination.").

[21]Id. at 34-36.

establish a prima facie case of discrimination because she cannot demonstrate that she was replaced by someone outside of her protected class or that she was treated less favorably than other similarly-situated employees who were outside her protected class.[22]

> The "similarly situated" prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably "under nearly identical circumstances." This coworker, known as a comparator, must hold the "same job" or hold the same job responsibilities as the Title VII claimant; must "share[] the same supervisor or" have his "employment status determined by the same person" as the Title VII claimant; and must have a history of "violations" or "infringements" similar to that of the Title VII claimant.

Alkhawaldeh, 851 F.3d at 426. See also Paske, 785 F.3d at 985 ("To establish the fourth element, [plaintiff must] show, inter alia, that his 'conduct that drew the adverse employment decision [was] "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.'"). Defendant argues that plaintiff is unable to satisfy the fourth element of a prima facie case because she has acknowledged that she "was not replaced by anyone,"[23] and because she cannot show that any other similarly situated employee was treated more favorably under nearly identical circumstances.[24]

---

[22]Id. See also Defendant YMCA's Reply to Plaintiff's Response to Defendant's MSJ ("Defendant's Reply"), Docket Entry No. 54, pp. 2-4.

[23]Defendant's Memorandum, Docket Entry No. 49, p. 35 (citing Plaintiff's First Amended Complaint, Docket Entry No. 32, p. 9 ¶ 32).

[24]Id. at 35-36.

Plaintiff responds that she "has pointed to the disparate treatment of Laura Wilson — a white woman — at a similar position who was not terminated."[25]  Plaintiff argues that

> [t]he YMCA placed Ms. Singleton in the position of Senior Program Manager, increasing the number of departments who reported to her from one to four (like Ms. Wilson), but did not give her a pay raise and claims not to have considered this a "promotion", while Ms. Wilson was given a pay raise, and Ms. Wilson's position change was considered by the Y to be a promotion.  As part and parcel to the reorganization, Ms. Singleton was made to retain personal training — a role with dozens of part-time trainers reporting to her, while also being placed in charge of multiple departments that she had no experience in managing.  The glaring part of the reorganization was that the departments Ms. Singleton was put in charge of all had minorities in charge of them, while Laura Wilson, Ms. Singleton's white counterpart, was put in charge of departments all headed by (and was reported to by) white people except the lone head of child care. . . .
>
> After complaining to members of the board, Ms. Singleton was moved by Mr. Swirczek from her office on the fourth floor — adjacent to the training floor where she could meet with members to confidentially talk about their health, fitness, and body image issues — and put in a cubicle on the second floor that was not adjacent to anyone she worked with (heads of departments she oversaw had offices on the first floor by the pool, or the second floor in a different area).  Ms. Singleton could not meet with her team in her cubicle and could not meet with personal training clients in her cubicle, and Ms. Singleton could not oversee training on the fourth floor main workout area, to do her job.  Ms. Singleton was the only management employee at her level without an office.  Her office on the fourth floor was filled with equipment when she was moved.

---

[25]Plaintiff's Response, Docket Entry No. 50, p. 1.  See also id. at 22 ("[Plaintiff] was treated less favorably than other similarly situated employees who were not members of that protected class, particularly Laura Wilson, her counterpart at the time of [her] termination.").

Ms. Singleton was not replaced when she was fired. The organizational chart, implemented in January 2014, three months prior to her firing, was ostensibly not race-related, but instead to have many fewer direct reports to Mr. Swirczek. [*sic*] When Ms. Singleton was fired and not replaced, all of her four reports then reported directly to Mr. Swirczek, essentially undoing half of the organizational chart and the alleged non-racial reason for the reorganization.[26]

Missing from the summary judgment record is evidence identifying any co-worker who was treated more favorably than the plaintiff under nearly identical circumstances. Although plaintiff "has pointed to the disparate treatment of Laura Wilson — a white woman — at a similar position who was not terminated,"[27] plaintiff has failed to cite any evidence from which a reasonable fact finder could conclude that Laura Wilson engaged in conduct like that which prompted plaintiff's termination but unlike the plaintiff, was not terminated. Instead, plaintiff argues that in the reorganization that occurred in January of 2014 she and Laura Wilson both received new titles and responsibilities, but that Laura Wilson received a salary increase while her salary remained the same. Since, however, defendant has submitted undisputed evidence showing that "[p]laintiff had already been promoted to Senior Director in February 2013 and had the attendant pay raise. . . [and that w]hen Ms. Wilson was promoted to Senior Director and received a pay increase in January 2014, she still made $4,000 less than

---

[26]Id. at 23.

[27]Id. at 1.

-12-

[p]laintiff,"[28] plaintiff has failed to cite evidence capable of showing that Wilson was treated more favorably. Because plaintiff has failed to cite evidence from which a reasonable jury could conclude that any employee outside of her protected class was treated more favorably than she under nearly identical circumstances, plaintiff's discrimination claim fails as a matter of law for failure to satisfy the fourth prong of her prima facie case. See Alkhawaldeh, 851 F.3d at 427; Paske, 785 F.3d at 985.

### 2. Defendant States a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment.

Defendant argues that even if plaintiff could establish a prima facie case it is nevertheless entitled to summary judgment on her race discrimination claim because it has articulated a legitimate, nondiscriminatory reason for plaintiff's termination, namely, "[p]laintiff was terminated for failing to meet the expectations of her as a Senior Program Director because of unacceptable performance."[29] As evidence that the plaintiff failed

---

[28]Defendant's Reply, Docket Entry No. 54, p. 4 (citing Lopez Declaration, Exhibit A to Defendant's Memorandum, Docket Entry No. 49-1, p. 3 ¶ 7 ("Ms. Singleton received a pay raise in conjunction with her [2013] promotion to $57,000."); and Scaffidi Declaration, Docket Entry No. 49-4, p. 3 ¶ 8 ("With the restructuring, Ms. Singleton's title did not change. She was to continue at her salary of $57,000 which was the second highest at Tellepsen, excluding the Executive Director. Ms. Wilson's pay was raised to %53,000 as she was now a Senior Programs Director as well.")).

[29]Defendant's Memorandum, Docket Entry No. 49, p. 36. See also
(continued...)

to meet the expectations of her position as Senior Program Director, defendant cites the "infractions of company policy and standard codes of conduct" set forth in the Employee Counseling Report that plaintiff received on May 3, 2013,[30] and the following "[p]erformance and conducted-related concerns" that arose within a short period of time following the January 2014 reorganization:

- Contrary to instructions of District Executive Director Jamie Scaffidi, Plaintiff disclosed confidential information to a contract trainer resulting in an additional write-up in February 2014;

- Plaintiff failed to timely complete an incident report for an injury at the facility and then lacked candor with the Executive Director about having already provided the same to risk management and upon inquiry responded in an insubordinate, unprofessional manner;

- Plaintiff failed to communicate with a member who made efforts to schedule training — for a period of nearly three weeks (the third such instance);

- In March 2014 Plaintiff failed to follow through on her revenue report as requested by Chad Swirczek and missed the deadline;

- The YMCA paid the expense for Plaintiff to complete certification for group fitness instruction, however Plaintiff did not complete it, and then told Mr. Swirczek on or about March 17, 2014 that she would not pursue it because she wanted to focus her energies elsewhere[.][31]

_____

[29](...continued)
id. at 20; Defendant's Reply, Docket Entry No. 54, pp. 4-8.

[30]Employee Counseling Report, Exhibit H to Plaintiff's Response, Docket Entry No. 50-9.

[31]Defendant's Memorandum, Docket Entry No. 49, p. 17. See also
(continued...)

-14-

Defendant argues that

> Swirczek wanted Plaintiff to succeed and was frustrated
> with the ongoing performance issues and poor attitude,
> and communicated with Human Resources.  In fact, he
> forwarded performance-related documentation to Human
> Resources and asked for coaching. . . .  On March 26,
> 2014, Vice President of Human Resources, Jennifer Lopez,
> met with Plaintiff to discuss the issues. . . .  During
> the meeting, to her frustration, Ms. Lopez observed that
> Plaintiff failed to take any responsibility and offered
> excuses.  Considering Plaintiff's conduct, performance
> and attitude, Ms. Lopez determined that Plaintiff did not
> meet the standards and expectations of the YMCA for a
> senior management position. . . .  Accordingly, she made
> the decision to separate Plaintiff's employment and did
> so on March 26, 2014. . . .[32]

The Fifth Circuit has recognized poor job performance as a
legitimate, non-discriminatory reason for termination of
employment. See Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 320
(5th Cir. 1997) (recognizing as legitimate, non-discriminatory
reasons for termination evidence demonstrating poor job
performance, difficulties working with others, and inadequate
leadership skills).  Defendant has thus articulated a legitimate,
non-discriminatory reason for terminating the plaintiff's
employment.

---

[31](...continued)
id. at 17-19 (elaborating on plaintiff's 2014 performance issues).

[32]Id. at 19-20 (citing Lopez Declaration, Exhibit A to
Defendant's Memorandum, Docket Entry No. 49-1, pp. 5-6 ¶¶ 20-22,
and Swirczek Declaration, Exhibit B to Defendant's Memorandum,
Docket Entry No. 49-2, pp. 9-10 ¶¶ 39-40, 42).

3.   Plaintiff Fails to Raise a Fact Issue as to Pretext.

Because defendant has stated a legitimate, non-discriminatory reason for terminating the plaintiff's employment, the burden returns to the plaintiff to cite substantial evidence capable of establishing that each of the employer's proffered justifications was mere pretext for race discrimination.[33]   See Auguster v. Vermillion Parish School Board, 249 F.3d 400, 402-03 (5th Cir. 2001).   The plaintiff may attempt to establish that she was the victim of intentional race discrimination "by showing that the employer's proffered explanation is unworthy of credence." Reeves, 120 S. Ct. at 2106 (quoting Texas Department of Community Affairs v. Burdine, 101 S. Ct. 1089, 1095 (1981) (citing McDonnell Douglas, 93 S. Ct. at 1825-26)).

> "Evidence that the proffered reason is unworthy of credence must be enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." This court has consistently held than an employee's "subjective belief of discrimination" alone is not sufficient to warrant judicial relief.

Auguster, 249 F.3d at 403 (quoting Bauer v. Albemarle Corp., 169 F.3d 962, 967 (5th Cir. 1999) (citation omitted)).   Although Bauer was decided before Reeves, which changed Fifth Circuit law on successful showing of pretext, the Fifth Circuit has stated that

---

[33]Plaintiff has not argued that the mixed-motive analysis applies and has therefore waived any such argument.   See Leal v. BFT, Ltd. Partnership, 423 F. App'x 476, 480 & n. 1 (5th Cir. 2011) (per curiam) (citing United States v. Reagan, 596 F.3d 251, 254 (5th Cir. 2010) (holding that a failure to adequately brief an argument results in waiver)).

"[n]othing in <u>Reeves</u> . . . abrogates <u>Bauer's</u> requirement of substantial evidence to support a claim of pretext." <u>Auguster,</u> 249 F.3d at 403 n. 3.

> The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." . . . In other words, "[i]t is not enough . . . to *dis* believe the employer; the fact finder must *believe* the plaintiff's explanation of intentional discrimination."

<u>Reeves,</u> 120 S. Ct. at 2108 (quoting <u>St. Mary's Honor Center v. Hicks,</u> 113 S. Ct. 2742, 2756 and 2754 (1993)).

Defendant argues that plaintiff is unable to cite evidence capable of establishing that its stated reason for terminating her employment, <u>i.e.,</u> "failing to meet the expectations of her as a Senior Program Director because of unacceptable performance,"[34] is a pretext for race discrimination because the plaintiff cannot cite any evidence from which a reasonable fact-finder could conclude that its reason for terminating her employment was false or that animus for her race was the true reason for her termination.[35] Citing <u>Spears v. Patterson UTI Drilling Co.,</u> 337 F. App'x 416, 421-22 (5th Cir. 2009 (per curiam), defendant argues that "[a] presumption exists here that . . . the very same supervisors would

---

[34]Defendant's Memorandum, Docket Entry No. 49, p. 36. <u>See also</u> <u>id.</u> at 20; Defendant's Reply, Docket Entry No. 54, pp. 4-8.

[35]<u>Id.</u> at 37-38. <u>See also</u> Defendant's Reply, Docket Entry No. 54, pp. 9-10.

not promote [plaintiff] over others outside of her protected class to a newly created supervisory position, and then subsequently terminate her employment for discriminatory reasons."[36] Defendant argues that "by way of reminder, [p]laintiff was recommended for a promotion by the same individual she claims discriminated against her — Chad Swirczek, and was then interviewed and approved for the promotion by Jennifer Lopez, who ultimately discharged her the following year."[37]

Plaintiff responds that defendant's stated reason for terminating her employment is a pretext for race discrimination because "[t]he circumstances of [her] write-ups, . . . promotion, and termination show discriminatory intent by the ultimate decision-maker, Chad Swirczek . . ."[38] Citing <u>Laxton v. Gap Inc.,</u> 333 F.3d 572, 578 (5th Cir. 2003), and <u>Russell v. McKinney Hospital Venture,</u> 235 F.3d 219, 227 (5th Cir. 2000), plaintiff argues that

> the discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker "acted as a rubber stamp, or the 'cat's paw,' for the subordinate employee's prejudice." . . . The degree to which the person [who] dropped the axe relied on the "independent investigations" is a question of fact for the jury. . .
>
> In this case, Ms. Lopez had no independent knowledge of the various alleged infractions of Ms. Singleton. She

---

[36]Defendant's Memorandum, Docket Entry No. 49, pp. 32-33.

[37]<u>Id.</u> at 38. <u>See also id.</u> at 11-12 (citing Lopez Declaration, Exhibit A to Defendant's Memorandum, Docket Entry No. 49-1, p. 3, ¶ 5, and Swirczek Declaration, Exhibit B to Defendant's Memorandum, Docket Entry No. 49-2, p. 3 ¶¶ 6-7).

[38]Plaintiff's Response, Docket Entry No. 50, p. 30.

> received the reports of Swirczek and allegedly chose to
> fire Ms. Singleton when she called Ms. Singleton in, and
> Ms. Singleton did not show sufficient contrition (or
> groveling), but instead defended herself. This is a case
> exactly suited to the Cat's Paw analysis. In this case,
> the originator of every alleged reason to fire
> Ms. Singleton was Swirczek, he was the source of the
> write-ups, and he was the one doing late-night research
> into his files to dredge up reasons to fire Ms. Singleton
> that he then forwarded to Ms. Lopez directly before the
> firing.[39]

"A 'cat's paw' case is one in which an employee seeks to hold his or her 'employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision.'" Turner v. Jacobs Engineering Group, Inc., 470 F. App'x 250, 253 n. 1 (5th Cir. 2012) (per curiam) (quoting Staub v. Proctor Hospital, 131 S. Ct. 1186, 1190 (2011)).

Plaintiff argues that the defendant's stated reason for terminating her employment is a pretext for race discrimination because the examples of poor performance on which the defendant relies are either unworthy or credence or did not warrant discipline or termination. Plaintiff argues that the five reasons for which she received an Employee Counseling Report on May 3, 2013, were pretextual because they

> did not all happen directly before they were reported by
> Swirczek to HR. Swirczek claims in his affidavit that
> when Ms. Singleton was out on FMLA, he had an opportunity
> to review her work. Swirczek was Singleton's direct
> supervisor before she went out on FMLA, making that
> excuse unbelievable. What actually happened is that
> Swirczek learned that Singleton made an HR complaint

---

[39]Id. at 28-29.

about him, and searched for reasons to write-up
Ms. Singleton. These reasons included multiple things
that Swirczek did not observe or have independent
knowledge about, and that were not reported to HR by the
person they happened to — except the alleged spreading
gossip and rumors about alleged affairs by Mr. Swirczek
(who is married with children), which was never
investigated by the YMCA's HR department. The timing of
when the write-up occurred is important. . .
Ms. Singleton made an HR complaint about her supervisor
verbally abusing her while she was out on FMLA recovering
from emergency surgery. In retaliation, to save himself,
Swirczek wrote Ms. Singleton up for everything he could
make up or find from others. This alone is suspect.
Substantively, they were suspect too . . . Most damning
to the use of these alleged incidents is that seven
months after the write-up on these issues, Ms. Singleton
was promoted from supervising one department to
supervising four departments, with four times the
responsibility, and if the Y is to be believed — through
the affidavits of Lopez and Swirczek — to help her career
development. These alleged firable offenses were not
enough to keep the Y from promoting Ms. Singleton and
assisting her career as an executive at the YMCA.[40]

Plaintiff's argument that the performance and conducted-
related concerns that arose after the January 2014 reorganization
were pretextual is based on plaintiff's disagreement with
Swirczek's and Lopez's evaluation of her performance and
plaintiff's belief that her conduct did not warrant discipline or
termination.[41] But plaintiff cannot create a fact issue on summary
judgment by disputing her employer's evaluation of her performance.
Plaintiff must cite evidence from which a reasonable fact-finder
could conclude that her employer did not honestly believe that her

---

[40]Id. at 25-26.

[41]Id. at 26-28.

performance was deficient and deserving of termination. See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002), cert. denied, 123 S. Ct. 2572 (2003) ("The issue at the pretext stage is whether [the defendant's] reason, even if incorrect, was the real reason for [the plaintiff's] termination."). Plaintiff has failed to cite such evidence.

Moreover, even if plaintiff's evidence were capable of establishing that her employer did not honestly believe that her performance was deficient and warranted termination, plaintiff has failed to cite any evidence from which a reasonable jury could conclude that the defendant's decision to terminate her employment was motivated by Swirczek's — or anyone else's — animus for her race. Plaintiff herself argues that Swirczek took the actions in 2013 about which she complains in retaliation for her having complained to Human Resources that he verbally abused her while she was on FMLA leave,[42] and that he took the actions in 2014 about which she complains in retaliation for her complaining about the reorganization that occurred in January of that year.[43]

In an apparent effort to raise an inference of racial animus, plaintiff argues that

> [t]he glaring part of the reorganization [that occurred in January of 2014] was that the departments Ms. Singleton was put in charge of all had minorities in

---

[42]Id. at 25-26.

[43]Id. at 26-28.

> charge of them, while Laura Wilson, Ms. Singleton's white
> counterpart, was put in charge of departments all headed
> by (and was reported to by) white people except the lone
> head of child care.[44]

But plaintiff fails to cite evidence from which a reasonable jury could conclude that following the reorganization all the employees that she supervised were minorities or that all the employees that Laura Wilson supervised were not minorities. Moreover, "plaintiff acknowledged [during her deposition] that many employees of all races were under her supervision; and many [employees of all races] were under the other Senior Director after the restructuring."[45]

Although plaintiff argues that her race (African-American) was the reason that the defendant terminated her employment, a subjective belief cannot establish a genuine issue of material fact regarding pretext or that plaintiff was a victim of race discrimination. See DeVoss v. Southwest Airlines Co., 903 F.3d 487, 492 (5th Cir. 2018) ("[Plaintiff] cannot establish pretext solely by relying on her subjective belief that unlawful conduct occurred."). Although plaintiff disagrees with Swirczek's and Lopez's assessment of her performance and conduct, plaintiff does not dispute that she engaged in the conduct for which the defendant says Lopez decided to terminate her employment. Because plaintiff

---

[44]Id. at 22-23.

[45]Defendant's Memorandum, Docket Entry No. 49, p. 23 (citing Oral and Videotaped Deposition of Rebecca Singleton, pp. 38-42, Exhibit G to Defendant's Memorandum, Docket Entry No. 49-7, pp. 22-26).

fails to present evidence from which a reasonable jury could conclude that Swirczek and/or Lopez did not honestly believe that plaintiff's performance was deficient and deserving of termination, or that the defendant's stated reason for terminating her employment was a pretext for race discrimination, the court concludes that the defendant is entitled to summary judgment on plaintiff's Title VII claim. This conclusion is bolstered by the fact that the same actors, i.e., Swirczek and Lopez, were responsible for both promoting plaintiff in 2013 and for terminating her employment in 2014. See Spears, 337 F. App'x at 421-22 ("The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue."). Because plaintiff has not shown that there exists a genuine issue of material fact that her race caused her termination, Defendant's MSJ will be granted.

## IV. Plaintiff's Motion to Strike

Plaintiff seeks to strike the affidavit of Ariel McMahan and ¶ 4 of the affidavit of Robert Cass.[46] Because the court has been able to rule on the Defendant's Motion for Summary Judgment without referring to or relying on the evidence that plaintiff has moved to strike, Plaintiff's Motion to Strike will be denied as moot.

---

[46]Plaintiff's Motion to Strike, Docket Entry No. 51, pp. 1-2.

## V.  Conclusions and Order

For the reasons stated in § III, above, Defendant's Motion for Summary Judgment (Docket Entry No. 48) is **GRANTED**.  Because the court has been able to rule on the Defendant's Motion for Summary Judgment without referring to the evidence that plaintiff has moved to strike, Plaintiff's Motion to Strike (Docket Entry No. 51) is **DENIED as MOOT**.

**SIGNED** at Houston, Texas, on this the 26th day of June, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE